# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| _____ : | |
| COMMONWEALTH ACQUISITION : | |
| GROUPS, LLC, : | |
| : | |
| *Plaintiff,* : | |
| : | |
| v. : | **Civil Action No. 3:14cv495** |
| : | |
| UHS OF DELAWARE, INC., *et al.,* : | |
| : | |
| *Defendants.* : | |
| _____: | |

## ANSWER AND COUNTERCLAIM OF
## UHS OF DELAWARE, INC., AND
## <u>UNIVERSAL HEALTH SERVICES, INC.</u>

**COME NOW** defendants UHS of Delaware, Inc., a Delaware corporation ("UHS-D") and Universal Health Services, Inc., a Delaware corporation ("UHS-I") (UHS-D and UHS-I are referred to collectively as "UHS"), by counsel, and for their Answer and Counterclaim to the Complaint of plaintiff Commonwealth Acquisition Groups, LLC ("Commonwealth"), respectfully state as follows.

## *ANSWER*

1.      UHS admits, upon information and belief, that Commonwealth is a New Jersey limited liability company with its principal place of business in the State of New Jersey.

2.      Admitted.

3.      UHS admits the first and second sentences of paragraph 3. With respect to the third sentence of paragraph 3, UHS admits that UHS-D provides management services, among other services, and denies the remaining allegations of this sentence.

4.	UHS admits that the exercise of personal jurisdiction over UHS-D by this Court is proper, and without admitting personal jurisdiction over UHS-I, consents to the exercise of personal jurisdiction over UHS-I by this Court solely in this matter.

5.	UHS admits that venue is proper in this Court.

6.	UHS admits that UHS-D executed the Office Lease appended as Exhibit A to the Complaint (the "Original Lease"), as Lessee, with Commonwealth Centre Ventures, LLC, as lessor. The Original Lease speaks for itself, and to the extent that the allegations of paragraph 6 are inconsistent with the Original Lease, they are denied.

7.	UHS admits that the Original Lease defines its term as being "for a period of sixty (60) months (as defined in Section 2) unless extended as set forth herein," with a Commencement Date of this initial term as "August 1, 2004," subject to confirmation in writing of the "actual Commencement Date" by Landlord and Tenant. To the extent that the allegations of this paragraph 7 are inconsistent with the terms of the Original Lease, those allegations are denied.

8.	UHS admits that paragraph 8 quotes a portion, but not the entirety, of Section 3 of the Original Lease. To the extent that the allegations of this paragraph 8 are inconsistent with the terms of the Original Lease, those allegations are denied.

9.	UHS admits that paragraph 9 quotes a portion, but not the entirety, of Section 17 of the Original Lease. To the extent that the allegations of this paragraph 9 are inconsistent with the terms of the Original Lease, those allegations are denied.

10.	UHS admits that paragraph 10 quotes a portion, but not the entirety, of Section 18 of the Original Lease. To the extent that the allegations of this paragraph 10 are inconsistent with the terms of the Original Lease, those allegations are denied.

11.     UHS admits that paragraph 11 quotes a portion, but not the entirety, of Section 26 of the Original Lease.  To the extent that the allegations of this paragraph 11 are inconsistent with the terms of the Original Lease, those allegations are denied.

12.     UHS admits that paragraph 12 quotes a portion, but not the entirety, of Section 27 of the Original Lease.  To the extent that the allegations of this paragraph 12 are inconsistent with the terms of the Original Lease, those allegations are denied.

13.     UHS admits that UHS-I executed a Lease Guaranty.  The remaining allegations of paragraph 13 are denied.

14.     UHS does not have sufficient information to permit it either to admit or to deny the allegations of paragraph 14.

15.     UHS does not have sufficient information to permit it either to admit or to deny the allegations of paragraph 15.

16.     UHS does not have sufficient information to permit it either to admit or to deny the allegations of paragraph 16.

17.     UHS does not have sufficient information to permit it either to admit or to deny the allegations of paragraph 17.

18.     UHS admits that UHS-D executed the Lease Amendment (hereinafter, the "First Lease Amendment") appended as Exhibit C to the Complaint.

19.     UHS admits that paragraph 19 quotes a portion, but not the entirety, of the First Lease Amendment.  To the extent that the allegations of this paragraph 19 are inconsistent with the terms of the First Lease Amendment, those allegations are denied.

20.     Paragraph 20 purports to summarize in a single sentence the terms of a multipage First Lease Amendment.  The First Lease Amendment speaks for itself, and to the

extent that the allegations of this paragraph 20 are inconsistent with the terms of the First Lease Amendment, those allegations are denied.

21.     UHS admits that UHS-I executed the Reaffirmation of Guaranty appended as Exhibit D to the Complaint.

22.     UHS admits that UHS-D executed the lease amendment dated November 7, 2007 (hereinafter, the "Second Lease Amendment") appended to the Complaint as Exhibit E.

23.     UHS admits that paragraph 23 quotes a portion, but not the entirety, of the Second Lease Amendment.  To the extent that the allegations of this paragraph 23 are inconsistent with the terms of the Second Lease Amendment, those allegations are denied.

24.     Paragraph 24 purports to summarize in a single sentence the terms of a multipage Second Lease Amendment.  The Second Lease Amendment speaks for itself, and to the extent that the allegations of this paragraph 24 are inconsistent with the terms of the Second Lease Amendment, those allegations are denied.

25.     UHS admits that the Second Lease Amendment provided for an extension of term for "an additional five (5) years," commencing on a date to be determined subsequent to the execution of the Second Lease Amendment.  UHS denies that the Second Lease Amendment establishes an Expiration Date of March 31, 2013.

26.     UHS admits that UHS-I executed the Reaffirmation of Guaranty appended as Exhibit F to the Complaint.

27.     Paragraph 27 defines a term, and does not set forth factual allegations, and as such requires no response.

28.     UHS admits that UHS-D executed the Lease Amendment dated September 8, 2010 (the "Third Lease Amendment") appended as Exhibit G to the Complaint.

29.     UHS admits that paragraph 29 quotes a portion, but not the entirety, of the Third Lease Amendment.  To the extent that the allegations of this paragraph 29 are inconsistent with the terms of the Third Lease Amendment, those allegations are denied.

30.     Paragraph 30 purports to summarize in a single sentence the terms of a multipage Third Lease Amendment.  The Third Lease Amendment speaks for itself, and to the extent that the allegations of this paragraph 30 are inconsistent with the terms of the Third Lease Amendment, those allegations are denied.

31.     Paragraph 31 defines a term, and does not set forth factual allegations, and as such requires no response.

32.     UHS admits that the Third Lease Amendment provided for a lease "term of four years" with respect to a separate and distinct area of approximately 2,635 square feet (the "Expansion Space"), but denies that the Third Lease Amendment sets forth an expiration date of November 30, 2014.  For ease of reference, the Third Lease Amendment hereinafter is also referred to as the "Expansion Lease."

33.     UHS admits that Cushman & Wakefield/Thalhimer (hereinafter "Thalhimer") and UHS-D communicated during 2012 regarding potential extension of the term for the Original Lease, as amended.  The remaining allegations of paragraph 33 are denied.

34.     UHS admits that John Goss was an employee of UHS and maintained an office in Virginia.

35.     UHS presently has insufficient information to permit it either to admit or to deny the allegations of paragraph 35.

36.     Paragraph 36 sets forth contentions of law that require no response; to the extent that any response is required, those allegations are denied.

37.     Admitted.

38.     Denied.

39.     UHS admits the first sentence of paragraph 39.  UHS has insufficient information to permit it either to admit or to deny the allegations of the second sentence of paragraph 39.

40.     UHS admits that Commonwealth, through its agent Thalhimer, continued to urge UHS-D to extend the term of the Original Lease, as amended, after March 31, 2013.

41.     UHS admits that it received the letter dated May 13, 2013, appended as Exhibit H.  The remaining allegations of this paragraph 41 purport to summarize the contents of the May 13, 2013 letter, and to the extent that those allegations are inconsistent with the letter itself, they are denied.

42.     UHS does not presently have sufficient information to permit it either to admit or to deny the allegations of paragraph 42.

43.     UHS admits that Commonwealth, through its agent Thalhimer, continued to urge UHS-D to extend the term of the Original Lease as amended.

44.     Admitted.

45.     Denied.

46.     Denied.

47.     UHS admits that UHS-D received the letter dated November 1, 2013, appended as Exhibit I to the Complaint.  The remaining allegations of this paragraph 47 are denied.

48.     UHS admits that UHS-D made a payment to Commonwealth, in care of its agent, Thalhimer, on or about November 7, 2013, but denies that it was a payment of "holdover rent" that was properly due and owing pursuant to the Original Lease, as amended.

49.     UHS admits that UHS-D received the letter dated December 11, 2013, appended as Exhibit J.  The remaining allegations of this paragraph 49 are denied.

50.     UHS admits that UHS-D provided notice of its intention to vacate the leased premises in November and December, 2013.

51.     UHS admits that UHS-D received the letter dated December 11, 2013, appended as Exhibit K.  The remaining allegations of this paragraph 51 are denied.

52.     Admitted.

53.     Denied.

54.     UHS admits that UHS-D made payments to Commonwealth, but denies that it made payment of any "holdover rent" that was properly due and owing to Commonwealth.

55.     UHS admits that, in or about February, 2014, UHS-D mistakenly made payment to Commonwealth of an amount equal to the monthly base rent that had been paid historically with respect to the leased premises excluding the Expansion Space.  UHS denies that any "holdover rent" was properly due and owing for February, 2014, or any other month.

56.     UHS does not presently have sufficient information to permit it either to admit or to deny the allegations of paragraph 56.

57.     Denied.

58.     UHS admits that UHS-D received the purported invoices appended as Exhibit L to the Complaint.  The remaining allegations of this paragraph 58 are denied.

59.     UHS admits that UHS-D received the purported "past due notices" appended as Exhibit M to the Complaint.  The remaining allegations of this paragraph 59 are denied.

60.     Denied.

61.     UHS incorporates by reference and realleges as if set forth in full its responses to ¶¶ 1-60 of the Complaint.

62.     UHS admits that the term of the Original Lease, as amended and extended, expired on March 31, 2013, save and except as to the Expansion Space.

63.     UHS admits that it remained in possession of the leased premises after March 31, 2013, at the invitation of, and with the knowledge and consent of, Commonwealth.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     UHS incorporates by reference and realleges as if set forth in full its responses to ¶¶ 1-60 of the Complaint.

72.     UHS admits that it agreed to lease the Expansion Space for a term of four years, commencing on a "Commencement Date" to be agreed by Landlord and Tenant after the execution of the Expansion Lease; the remaining allegations of paragraph 72 are denied.

73.     UHS admits that the Expansion Lease calls for payment of monthly rents, from December 1, 2013, to November 30, 2014, of $4,698.61 per month.  The remaining allegations of this paragraph 73 are denied.

74.     Paragraph 74 sets forth plaintiff's contentions of law with respect to obligations arising under the Expansion Lease; the Expansion Lease speaks for itself, and to the extent that the allegations of paragraph 74 are inconsistent with, or incompletely describe, obligations arising under the Expansion Lease, those allegations are denied.

75.     Paragraph 75 sets forth plaintiff's contentions of law with respect to obligations arising under the Expansion Lease; the Expansion Lease speaks for itself, and to the extent that the allegations of paragraph 75 are inconsistent with, or incompletely describe, obligations arising under the Expansion Lease, those allegations are denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     UHS incorporates by reference and realleges as if set forth in full its responses to ¶¶ 1-60 of the Complaint.

82.     Admitted.

83.     Paragraph 83 sets forth plaintiff's contentions of law with respect to the Guaranty, and as such requires no response; to the extent that any response is required, the allegations of paragraph 83 are denied.

84. Paragraph 84 sets forth plaintiff's contentions of law with respect to the Guaranty, and as such requires no response; to the extent that any response is required, the allegations of paragraph 84 are denied.

85. UHS-I admits that it entered into a Reaffirmation of Guaranty contemporaneously with the execution of the First Lease Amendment.

86. UHS-I admits that it entered into a Reaffirmation of Guaranty contemporaneously with the execution of the Second Lease Amendment.

87. Denied.

88. Denied.

89. To the extent any allegation of the Complaint has not been fully answered in the preceding paragraphs, such allegation is denied.

90. UHS reserves the right to assert such other and further defenses as may become known to it during the course of discovery and trial herein.

### Affirmative Defenses

91. ***Failure to State a Claim upon which Relief may be Granted.*** Count I of the Complaint fails to state a claim upon with relief may be granted, insofar as it seeks "holdover rent" not properly due.

92. ***Accord and Satisfaction.*** Commonwealth is barred from recovery on each count of the Complaint by virtue of accord and satisfaction.

93. ***Waiver.*** Commonwealth is barred from recovery, in whole or in part, by the doctrine of waiver.

94. ***Estoppel.*** Commonwealth is barred from recovery, in whole or in part, by the doctrine of estoppel.

95.    *Failure to Mitigate Damages.*  Commonwealth is barred from recovery, in whole or in part, by its failure to mitigate its damages.

## COUNTERCLAIM

**COME NOW** UHS of Delaware, Inc. ("UHS-D") and Universal Health Services, Inc. ("UHS-I") (UHS-D and UHS-I are referred to collectively as "UHS"), by counsel, and for their Counterclaim against Commonwealth Acquisition Groups, LLC ("Commonwealth"), respectfully state as follows.

### Introduction

1.    This Counterclaim seeks declaratory relief, an accounting, disgorgement, and damages in for unjust enrichment arising out of overpayments and misapplication of payments, with respect to commercial premises leases placed at issue in the Complaint in this action.

### Parties, Jurisdiction & Venue

2.    UHS-D is a Delaware corporation with its principal place of business located in the Commonwealth of Pennsylvania.  UHS-D is engaged in the provision of health care-related services.

3.    UHS-I is a Delaware corporation with its principal place of business located in the Commonwealth of Pennsylvania and is the ultimate parent of UHS-D.  UHS is a publicly-traded company engaged in the provision of health care services.

4.    Commonwealth is a New Jersey limited liability company with its principal place of business located in the State of New Jersey and upon information and belief is engaged in commercial real estate acquisition and leasing.

5. This Court enjoys subject matter jurisdiction pursuant to 28 U.S.C. § 1332, inasmuch as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court enjoys personal jurisdiction over the counterclaim defendant because it regularly transacts business in Virginia (and thus is subject to jurisdiction pursuant to Va. Code Ann. § 8.01-328.1(A)(1)), owns or has an interest in real estate (and more particularly the real estate placed at issue in this action) in Virginia (and thus is subject to jurisdiction pursuant to Va. Code Ann. § 8.01-328.1(A)(6)), and has availed itself of this Court by bringing its Complaint in this Court.

7. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(2), and this division, pursuant to Local Civil Rule 3(C), because a substantial majority of the transactions and occurrences placed at issue in this action, and in this Counterclaim, arose in this district and in this division, and the counterclaim relates to property located in this district and division.

## FACTUAL BACKGROUND

### A. The Leases

8. UHS-D was, at the times relevant to this Counterclaim, the lessee of commercial premises pursuant to the lease dated July 30, 2004 (the "Original Lease"), a copy of which is appended to the Complaint as Exhibit A and is incorporated by reference, as that Original Lease has been extended and amended pursuant to lease amendments appended as Exhibits C and E of the Complaint, also incorporated by reference. For ease of reference, the Original Lease, as extended and amended by the lease amendments set out as Exhibits C and E to the Complaint, is referred to collectively herein as the "Prime Lease," and the premises leased pursuant to the Prime Lease are referred to collectively as the "Prime Leased Premises."

9.      UHS-D was, at the times relevant to this Counterclaim, also the lessee of a second set of commercial premises pursuant to the lease amendment dated September 8, 2010, a copy of which is appended to the Complaint as Exhibit G and is incorporated by reference.  For ease of reference, this lease amendment is hereinafter referred to as the "Expansion Lease,"[1] and the premises leased pursuant to it are referred to as the "Expansion Space."

### B.  The Extension Discussions &
### Invitation to Continue Occupancy pursuant to the Prime Lease

10.      In and around 2012 and early 2013, UHS-D was nearing the end of the term of the Prime Lease and the Expansion Lease.  UHS-D thus faced an impending decision whether it would seek once again to extend the term of the Prime Lease, or instead would seek new leased space.  UHS-D faced a similar decision with respect to the Expansion Lease.

11.      UHS-D retained Thalhimer – the same real estate brokerage representing plaintiff – to assist UHS-D with *both* options, seeking appropriate new premises to lease, on the one hand, and negotiating for extension of the Prime Lease and Expansion Lease, on the other.

12.      Commonwealth desired to retain UHS as a tenant in both sets of premises, and encouraged UHS to remain in Commonwealth's leased premises, rather than move to new space.

13.      The term of the Prime Lease was set to end on March 31, 2013.  As an inducement to UHS-D to remain in the premises that are the subject of the Prime Lease, Commonwealth, acting by and through Thalhimer, advised UHS-D that it would be subject to "holdover rent," equal to 150% of the most recent monthly rent, if it remained in the Prime Leased Premises past March 31, 2013, but that Commonwealth would waive this purported

---

[1]    Lest there be any confusion, this is the same instrument referred to in the Complaint as the "Third Lease Amendment."

"holdover rent" so that UHS-D might remain in the premises paying only its then-current "base rent."

14.     Relying on the inducement of Commonwealth, acting by and through its agent Thalhimer, UHS-D determined in early 2013 to remain in the Prime Leased Premises after March 31, 2013, believing that it would pay only base rent for additional months of occupancy as it weighed its options for long-term space.

15.     Thalhimer reiterated the offer to remain in the Prime Leased Premises at base rent in a letter dated May 13, 2013 (copy appended to the Complaint as Exhibit H and incorporated herein by reference), but cryptically stated that "[w]hile you work through the process the owner is not going to charge the additional holdover rent due per Section 18 of the lease, but is going to reserve the right to charge this from April 1, 2013" -- a date a month and half *prior* to the date of the communication.  This statement was entirely inconsistent with the inducement Thalhimer had previously offered to UHS-D to remain in the Prime Leased Premises by paying only existing base rent.

16.     UHS-D accepted, without undertaking an independent legal analysis of the Prime Lease, the representation of Thalhimer -- which was serving simultaneously as broker to UHS-D as well as to Commonwealth, and thus owed both a duty of loyalty and fiduciary duties to UHS-D – that UHS-D would be obliged to pay "holdover rent," at 150% of base rent, *but for* the inducement offered by Commonwealth through Thalhimer.

17.     UHS-D occupied the Prime Leased Premises from April through October, 2013, paying only base rent, pursuant to and in reliance upon the invitation and offer of Commonwealth made through its agent Thalhimer.  At no time from April through October, 2013, was UHS-D billed for "holdover rent," or advised in any way by Commonwealth or its

agent, Thalhimer, that "holdover rent" was accruing and that Commonwealth believed such unbilled "holdover rent" nevertheless to be payable.

### C. The Belated Demand for Retroactive "Holdover Rent"

18.     In or about November, 2013, after weighing its needs and options carefully, UHS-D advised Commonwealth, through its agent, Thalhimer, that UHS-D intended to vacate the Prime Leased Premises and the Expansion Space at the end of January, 2014, and move to new premises.

19.     By letter dated November 1, 2013, Commonwealth, acting through its agent Thalhimer, for the first time demanded the payment of "holdover rent," payable (according to the demand) *retroactively* to April, 2013, in the amount of $226,180 for the period April 1, 2013, through November 30, 2013.

20.     Once again without conducting an independent legal review of the Prime Lease, UHS-D relied upon the representations of Thalhimer, its agent and agent to Commonwealth, as well, that the "holdover rent" demanded was in fact properly due and owing, and paid the "holdover rent" demanded, of $226,180, in full.

21.     UHS-D, believing on the basis of the representations of Commonwealth through its agent, Thalhimer, that UHS-D was obliged to do so, thereafter paid rent on the Prime Leased Premises, at the demanded "holdover" rate of 150% of base rent payable for the last month of the term of the Prime Lease as extended, for the months of December, 2013 and January, 2014.

### D. The Further Claim for a Year's Rent on the
### Claim of "Tenancy at Sufferance," and the
### Refusal to Credit Payment of Expansion Lease Rents

22.     UHS-D vacated the Prime Leased Premises on or about January 31, 2014, in accordance with the notice it provided months earlier, believing that it had satisfied all of the rent obligations arising under the Prime Lease, as amended and extended, and having additionally paid a total of more than $282,000 in "holdover rent" (over and above base rent of more than $565,000) demanded by Commonwealth, through its agent Thalhimer, for the months of April, 2013, through January, 2014.

23.     As a result of an error in financial processing of automated payments, in or about February 1, 2014, UHS-D's accounts payable department made a payment of approximately $56,545 for "base rent" (but not additional "holdover rent") for the month of February, 2014, notwithstanding UHS-D's having departed the premises.

24.     When UHS-D became aware of the erroneous payment of base rent for February, UHS-D requested that the erroneous payment be applied to payment of future rents due with respect to the Expansion Space, as to which the Expansion Lease did not expire until November 30, 2014.  The erroneous payment was more than sufficient to cover all such future rents.

25.     Notwithstanding the request of UHS-D, Commonwealth, through its agent, Thalhimer, refused to apply the erroneous payment of base rent for February to satisfy future rents arising under the Expansion Lease.  Instead, Commonwealth, as set forth in its Complaint, takes the position that *no* payment has been made with respect to the Expansion Lease, and that rents for the Expansion Space are unpaid and delinquent for the period from February, 2014, through November 30, 2014.

26.     Instead of applying the erroneous payment in accordance with UHS-D's specific instructions, Commonwealth, acting by and through its agent, Thalhimer, has applied the erroneous payment in satisfaction of Commonwealth's assertion that UHS-D owes it rents for February and March, 2014, and in particular has applied the payment to satisfy "base rent" Commonwealth claims is due for February, 2014.

27.     Commonwealth's claim to entitlement to rents for February and March, 2014, is based upon an assertion that UHS-D is a "holdover tenant" pursuant to the following provision of the Prime Lease:

> If Tenant remains in possession of the Premises after the expiration of termination of the term of this lease **without Landlord's written consent,** such possession shall, at Landlord's option, (a) a tenancy at sufferance only, during which tenancy at sufferance annual rent shall be due and payable at 150% of the annual rent due for the last month of the term, or, at the sole option of the Landlord, (b) result in an extension of this lease for a period of month-to-month, upon the terms and conditions applicable to the last year of the preceding term, except monthly rent, which shall be at 150% of the monthly rent due during the month-to-month period prior to the expiration or termination of this lease.

Original Lease, § 18 (emphasis added).[2]

28.     It is clear from the facts and circumstances described in the preceding paragraphs that UHS-D is not, and as a matter of the plain words of the contract cannot be deemed, a "holdover tenant," because its tenancy on and after March 31, 2013, clearly was not "without the consent of the Landlord." Quite to the contrary, UHS-D was repeatedly invited by Commonwealth, acting through its agent, Thalhimer, to remain in the Prime Leased Premises,

---

[2] This section's requirement that a "tenancy at sufferance" be without landlord's consent, or against landlord's will, is definitional to this legal term of art. As *Black's Law Dictionary* relates, a "tenancy at sufferance" is "[a] tenancy arising when a person who has been in lawful possession of property **wrongfully** remains as a holdover after his or her interest has expired." **Black's Law Dict.** 1505 (8th ed. 2004) (emphasis added).

was induced to do so by a promise to waive "holdover" rent claimed to be due for any occupancy after March 31, 2014, and had its consented-to tenancy confirmed in multiple writings. Plainly and simply, UHS-D was being courted by Commonwealth, through Thalhimer, to remain in the building throughout this invited continuation in tenancy.

29.     Because UHS-D was not a "holdover tenant" pursuant to the Prime Lease, the "holdover rents" demanded by Commonwealth through its agent, Thalhimer, were not properly due and owing.

30.     Because UHS-D was not a "holdover tenant" pursuant to the Prime Lease, the "holdover rents" paid by UHS-D pursuant to the demand of Commonwealth's agent, Thalhimer, were not rightfully due to Commonwealth, were wrongfully demanded, and have been wrongfully retained by Commonwealth.

31.     Because UHS-D was not a "holdover tenant" pursuant to the Prime Lease, UHS-D's occupancy of the Prime Leased Premises after March 31, 2013, was not a tenancy at sufferance, and did not create an obligation to pay rents for a year. To the contrary, UHS-D was invited to continue to occupy the Prime Leased Premises as a tenant at will, on a month-to-month basis, by Commonwealth through its agent; occupied the Prime Lease Premises from April 1, 2013, through January 31, 2014, on such basis; and vacated the Prime Leased Premises on January 31, 2014, after providing reasonable notice of its intent to end its month-to-month tenancy.

### D.  Damages to UHS

32.     UHS-D has been damaged by the wrongful extraction of "holdover rents" not properly due pursuant to the Prime Lease. UHS-D has paid Commonwealth more than

$280,000 in "holdover rents" not properly due and owing; Commonwealth has failed and refused to return these improperly collected and improperly retained "rents" to UHS-D.

33.     UHS-D has been damaged by Commonwealth's failure and refusal properly to credit the erroneous payment of more than $56,000 in "base rent" on the Prime Leased Premises for February, 2014, to payment of future rent obligations to the Expansion Space, and by Commonwealth's subsequent efforts to assess late fees, interest and collection costs with respect to these rents that have been properly paid for the remaining term of the Expansion Lease. Such fees, interest and collection costs are not properly due and owing to Commonwealth.

34.     UHS-I is being damaged, and faces the prospect of future damages, in the form of potential guaranty obligations for sums demanded by Commonwealth from UHS-D.

## COUNT 1

## DECLARATORY JUDGMENT

35.     UHS incorporates by reference and realleges as if set forth in full the allegations of paragraphs 1 through 34 of this Counterclaim.

36.     The claim of Commonwealth that UHS-D was a "holdover tenant" and "tenant at sufferance" on and after April 1, 2013, and that as such is obligated to Commonwealth for rents, late fees, interest and collection costs with respect to the Prime Lease and the Expansion Lease, and the claim of UHS-D (adopted by UHS-I) that UHS-D was not a "holdover tenant" or a "tenant at sufferance," constitute actual and antagonistic assertions and denials of right that are ripe for adjudication and susceptible of declaratory relief, pursuant to 28 U.S.C. § 2201 *et seq.* and Va. Code Ann. § 8.01-184 *et seq.*

37.    The claim of Commonwealth that UHS-D has failed to pay rents, late fees and collection costs with respect to the Expansion Lease, and the claim of UHS-D (adopted by UHS-I) that UHS-D has fully paid, and prepaid, all obligations arising under the Expansion Lease, constitute actual and antagonistic assertions and denials of right that are ripe for adjudication and susceptible of declaratory relief, pursuant to 28 U.S.C. § 2201 *et seq.* and Va. Code Ann. § 8.01-184 *et seq*.

38.    On the facts and circumstances of this case, UHS-D is entitled to a declaration: (a) that, pursuant to the Prime Lease, it was not a "holdover tenant" in the Prime Leased Premises; (b) that, pursuant to the Prime Lease, Commonwealth was not entitled to collect "holdover rent" from UHS-D in light of the agreed continuing occupancy of UHS-D; (c) that, pursuant to the Prime Lease, UHS-D was not a tenant at sufferance with respect to the Prime Leased Premises; (d) that, pursuant to the Prime Lease, UHS-D has no obligation to pay Commonwealth rents for the months of February and March, 2014; and (e) that UHS-D has paid all obligations arising under the Expansion Lease.

39.    UHS-D is also entitled to the entry of such other and further orders as may be necessary to give effect to declaratory relief provided pursuant to this count, including without limitation injunctions.


## COUNT 2

### ACCOUNTING & DISGORGEMENT

40.    UHS incorporates by reference and realleges as if set forth in full the allegations of paragraphs 1 through 34 of this Counterclaim.

41.     As set forth with greater particularity in the preceding paragraphs, Commonwealth, directly and through its agent, Thalhimer, has charged, collected and retained "holdover rents" not properly due and owing; has improperly failed and refused to credit the erroneously-remitted February "base rent" payment with respect to the Prime Leased Premises to past and future rent obligations arising under the Expansion Lease; and has asserted charges, including late fees, interest and collection costs, to which it is not entitled as a matter of law.

42.     UHS-D is entitled, as a matter of equity, to an accounting of the sums paid by it to Commonwealth and the proper application of the same to *bona fide* obligations arising under the Prime Lease and the Expansion Lease, in each case as amended and extended, and disgorgement of any sums found to have been wrongfully retained by Commonwealth.

## COUNT 3

### UNJUST ENRICHMENT

43.     UHS incorporates by reference and realleges as if set forth in full the allegations of paragraphs 1 through 34 of this Counterclaim.

44.     As set forth with greater particularity in the preceding paragraphs, Commonwealth, directly and through its agent, Thalhimer, has charged, collected and retained "holdover rents" to which it was not entitled, and collected, retained and misapplied an erroneous payment for "base rent" for February, 2014, with respect to the Prime Leased Premises.

45.     Under the circumstances of this case, it would be unjust, and a miscarriage of justice, for Commonwealth to retain the "holdover rents" and the February 2014 "base rent" to which it was not entitled as a matter of law.  Commonwealth has been unjustly enriched, in an amount to be proven at trial but presently estimated to be in excess of $336,000, by its wrongful retention of these sums to which it was not entitled.

46.     UHS-D has been damaged, in an amount to be proven at trial but presently in excess of $336,000, by the unjust enrichment of Commonwealth.

47.     UHS-D is entitled, as a matter of law and equity, to recover damages against Commonwealth in the amount of Commonwealth's unjust enrichment.

**WHEREFORE** UHS prays for the following relief:

A.     Entry of an order in the nature of a declaration that:

(1)     Pursuant to the Prime Lease, UHS-D was not a "holdover tenant" by virtue of its occupancy of the Prime Leased Premises and/or the Expansion Space at any time after March 31, 2013;

(2)     Pursuant to the Prime Lease, Commonwealth did not have the right to charge to UHS-D or collect from UHS-D "holdover rent," in excess of base rent,  by virtue of UHS-D's occupancy of the Prime Leased Premises at any time after March 31, 2013;

(3)     Pursuant to the Prime Lease, Commonwealth has no right or entitlement to retain "holdover rents" collected from UHS-D with respect to UHS-D's occupancy of the Prime Leased Premises at any time after March 31, 2013;

(4)     Pursuant to the Prime Lease, UHS-D was not a "holdover tenant," and thus not a "tenant at sufferance," and accordingly Commonwealth has no right or entitlement to charge UHS-D for or collect from UHS-D any rents (including without limitation "base rent" and "holdover rents") for the months of February and March, 2014;

(5)     UHS-D was entitled to apply the erroneous February 2014 payment of "base rent" to future rents and other charges due to Commonwealth pursuant to the Expansion Lease; and

(6)     UHS-D has fully paid all rents and other obligations due pursuant to the Expansion Lease through the expiry of its term.

B.     Entry of an order requiring an accounting of all rents and other sums paid to Commonwealth pursuant to the Prime Lease and the Expansion Lease on and after January 1, 2013, and disgorgement of any and all sums improperly retained by Commonwealth;

C.     An award of damages to UHS-D, from Commonwealth, in an amount equal to the unjust enrichment of Commonwealth proven at trial, presently believed to be in excess of $336,000; and

D.     Such other and further relief as may be appropriate on the facts and circumstances of this case.

Respectfully submitted,

**UHS OF DELAWARE, INC.**
**UNIVERSAL HEALTH SERVICES, INC.**


By:_____/s/ Alan D. Albert_____
            Of counsel

Alan D. Albert (VSB No. 25142)
Attorney for UHS of Delaware, Inc.
and Universal Health Services, Inc.
LeClairRyan, A Professional Corporation
999 Waterside Drive, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 441-8914
Facsimile:  (757) 624-3773
E-mail: *alan.albert@leclairryan.com*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2014, I electronically filed the foregoing Answer and Counterclaim  with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

      /s/ Alan D. Albert      

Alan D. Albert (VSB No. 25142)
Attorney for UHS of Delaware, Inc.
and Universal Health Services, Inc.
LeClairRyan, A Professional Corporation
999 Waterside Drive, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 441-8914
Facsimile:   (757) 624-3773
E-mail: *alan.albert@leclairryan.com*
